IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **LANIER LANDAU BRIGHT, JR.,** | * | |
| Petitioner, | * | |
| v. | * | Civ. No. DLB-20-2628 |
| **WARDEN,** | * | |
| Respondent. | * | |

**MEMORANDUM OPINION**

Self-represented petitioner Lanier Landau Bright, Jr. timely filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the validity of his state conviction. ECF 1, 4, 5. The respondents filed a limited answer seeking dismissal of the petition on the grounds that Bright's claims are unexhausted, procedurally defaulted, and meritless. ECF 7. Bright filed a reply and several supplements. ECF 10, 11, 12, 14, 15, 16. No hearing is necessary. *See* Rule 8(a), *Rules Governing § 2254 Cases in the U.S. Dist. Cts.*; Loc. R. 105.6 (D. Md. 2023); 28 U.S.C. § 2254(e)(2). For the following reasons, the petition is dismissed. A certificate of appealability shall not issue.

**I.     Background**

In November 2018, the Wicomico County Sheriff's Office received an anonymous tip that Bright was distributing controlled dangerous substances ("CDS"), including cocaine, heroin, crack cocaine, marijuana, and pills, from residences located at 610 and 620 Liberty Street in Salisbury, Maryland. ECF 7-1, at 19. The source also stated that Bright frequently drove a blue Pontiac Bonneville, a gold Pontiac G6, and a burgundy Ford Expedition, two of which were registered to "Danielle Dashielle." *Id.*

On November 26, police began to surveille 610 and 620 Liberty Street. *Id.* Officer Seichepine, who later would describe the investigation in an affidavit in support of a search warrant for 620 Liberty, observed several vehicles parked in the driveway and along the street. *Id.* He checked the vehicles' registration and determined that a gold Pontiac G6 parked in the driveway at 620 Liberty and a red Pontiac sedan and a red Ford Expedition parked on the street in front of the same house, all with Delaware license plates, were registered to "Danielle Dashields." *Id.* Seichepine checked the Maryland Electronic Ticketing System and found that Bright had been stopped within the past year while driving each of these vehicles. *Id.* He later observed a blue Pontiac Bonneville registered to Dashields parked directly in front of 610 Liberty Street. *Id*. at 20. He continued to observe the vehicles parked in the driveway and on the street in front of 620 Liberty over several days. *Id*. at 21–25.

On November 29, Seichepine conducted surveillance of another home whose address was on the registration of a maroon Hyundai sedan he saw at 610 and 620 Liberty Street. *Id*. at 20. He observed a woman exit that home, enter the Hyundai, and drive away. *Id.* He followed her and, after observing her commit traffic violations, conducted a traffic stop. *Id.* During the stop, he smelled the odor of marijuana and conducted a search of the vehicle that yielded suspected marijuana pieces, a folded piece of paper with an off-white powder that Seichepine believed to be CDS, and two small yellow zip lock bags that Seichepine believed were used to package CDS. *Id.* at 21.

On December 3, another officer, DFC Hagel, was surveilling the blue Pontiac Bonneville that had been parked on the street in front of 610 Liberty Street. *Id*. at 22. Hagel saw a woman leave 610 Liberty, get in the Bonneville, and drive away. *Id.* He conducted a traffic stop, which Seichepine later joined. *Id.* The driver said her current address was 610 Liberty Street. *Id.* She

stated she had marijuana in her bra and gave the marijuana to Hagel.  *Id*.  In the trunk, Hagel found a glass measuring cup, at the bottom of which was a white residue that Hagel and Seichepine suspected to be cocaine.  *Id.*  When tested, the substance showed an immediate positive reaction for the presence of cocaine.  *Id*.  The driver stated the vehicle belonged to "Danielle," whom she identified as the fiancée of "Lanier."  *Id.* at 23.  The same day, Seichepine observed Dashields walking from the gold Pontiac G6 and entering 620 Liberty Street.  *Id.*

On December 6, 2018, Hagel and Seichepine conducted a traffic stop of another vehicle that frequently parked at 610 Liberty Street.  *Id*.  The driver was identified as Trevon Brown.  *Id.*  A K-9 "scan/sniff" of the vehicle returned a positive alert, and Hagel and Seichepine searched the vehicle and discovered a clear plastic bag that contained white residue that tested positive for the presence of cocaine.  *Id*.  A corner of the bag had been ripped off, a practice Seichepine stated was used for packaging and storing CDS for sale.  *Id.*  Brown stated that his sister, Danielle Dashields, lived at 620 Liberty Street and that he sometimes stayed there as well.  *Id*. at 24.

On December 7, police conducted a trash pull at 620 Liberty Street.  *Id.*  Officers found several plastic sandwich bags missing corners.  *Id.*  One bag tested positive for the presence of cocaine.  *Id.*  Police also found two knotted pieces of plastic bags, which Seichepine identified as a common practice for packaging and storing CDS for sale.  *Id.*  Police conducted a second trash pull on December 14.  *Id*. at 25.  They found mail addressed to Bright and Dashield's former address, which Seichepine had identified based on searches in police and court databases.  *Id.*  Police also found an empty box of sandwich bags, four full-sized sandwich bags lined with white powder residue that tested positive for cocaine, and four plastic bag pieces that suggested the storage of CDS.  *Id.*

3

On December 17, Hagel observed Bright driving the gold Pontiac G6. *Id.* A criminal history check on Bright revealed he had prior convictions for CDS possession and robbery and was on probation. *Id.* at 25–26.

On December 17, Seichepine applied for a search and seizure warrant for 620 Liberty Street based on the foregoing observations and evidence. *Id.* at 13.[1] The Circuit Court for Wicomico County issued the warrant the same day. *Id.* at 97. On December 18, police executed the warrant. *Id.* They seized fentanyl and other drugs from the house and arrested Bright. *Id.* On February 4, 2019, a criminal information was filed in the Circuit Court for Wicomico County charging Bright with three counts of possession with intent to distribute narcotics and related offenses. *Id.* at 4, 12.

On May 23, 2019, Bright filed a motion to suppress and exclude evidence. *Id.* at 8, 32–37. He claimed Seichepine's affidavit fell "short of providing probable cause to establish a nexus between the suspected contraband and 620 Liberty Street." *Id*. at 32. He argued that the affidavit did not state that he was ever seen entering or leaving 620 Liberty Street or engaging in the distribution of CDS, and it did not rely on any controlled buys at 620 Liberty Street or by him. *Id*. at 33. He challenged the credibility of the anonymous source, arguing nothing in the surveillance corroborated the anonymous source with respect to the sale of drugs. *Id*. at 34. He argued there was no connection between the CDS found in the cars during the traffic stops and him or 620 Liberty Street because the stops occurred days after the cars had been observed at the residence. *Id*. at 34–35. And, as to the trash pulls, he argued that the affidavit did not state that he or another resident at 620 Liberty Street had been observed placing the trash can in the location it was

---

[1] Seichepine's affidavit incorrectly stated Bright had been convicted of robbery. Rather, Bright was on probation after having pled guilty to conspiracy to commit robbery. ECF 7-1, at 116.

4

recovered from or that the trash can was numbered, so there was an insufficient nexus between the CDS recovered during the trash pull and 620 Liberty Street. *Id*. at 36.

A hearing on the motion to suppress took place the day after the motion to suppress was filed. ECF 7-2 (5/24/19 Tr.). During the May 24 suppression hearing, Bright reiterated his arguments that the judge who signed the warrant lacked a substantial basis for finding probable cause to search 620 Liberty Street because: (1) the anonymous tip source was not identified and his or her credibility could not be established; (2) the traffic stops failed to demonstrate a nexus between the contraband recovered from the car searches and 620 Liberty Street; and (3) the trash pulls were not reliable. ECF 7-2, at 3–15. The court denied Bright's motion, finding there had been a substantial basis for the judge to conclude that the evidence sought by the warrant likely would be discovered in the residence. *Id*. at 24. The court reasoned that the two trash pulls created a substantial basis for the issuance of the warrant. *Id*. at 24–25. It stated:

> Now I do agree with [defense counsel] that there is a lot of information in this application and affidavit that really does not add a lot to the case. And I agree also that the information from the anonymous source is not in and of itself entitled to great consideration. . . . But it is information that I guess can be considered in a totality of the circumstances but it's not a major factor.
>
> What does seem to me to be determinative are the trash pulls, and recognizing the possibilities that might influence that as outlined by [defense counsel]. And I would agree if it was only the first trash pull which had just corners from baggies or a baggy with the corner missing or that type of thing, but then the following week on trash day they pulled another which actually contained baggies with what tested to be cocaine residue.
>
> And it seems to me taking all of the factors that are set forth, discounting to a great extent, or probably discounting entirely the traffic stop of some woman who started from a different place and so forth, nonetheless with the trash pulls I do believe that there was a substantial basis for the decision to issue the search warrant, so I'm going to deny the motion to suppress.

*Id.*

On June 7, Bright pled not guilty on a stipulated statement of facts to one count of possession with intent to distribute fentanyl. ECF 7-1, at 8; ECF 7-3 (6/7/19 Tr.). After the State read the stipulated statement of facts, the court found Bright guilty of possession with intent to distribute; the remaining counts were dismissed. ECF 7-1, at 7–8; ECF 7-3, at 16–19. The court sentenced Bright to a 20-year term of confinement, with all but ten years suspended, and three years of probation. ECF 7-1, at 6–7; ECF 7-3, at 38.

Bright timely appealed. He claimed the court erred in denying his motion to suppress. ECF 7-1, at 6, 40–62. In an unpublished opinion, the Appellate Court of Maryland (then named the Court of Special Appeals) summarized Bright's contentions as follows:

> First, appellant argues that the anonymous source's information should not be given any weight in the totality of circumstances. In his view, the search warrant did not demonstrate the anonymous source's basis of knowledge or veracity, making it an insufficient *indicia* of reliability. For a magistrate to rely on an anonymous source's information when issuing a warrant, there must be "sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor." *Birchead v. State*, 317 Md. 691, 704 (1989) (quoting *Spinelli v. United States*, 393 U.S. 410, 416 (1996)). Appellant argues that although police corroborated the source's information regarding the type of drugs sold by appellant and the registration of the Bonneville and the G6, this corroboration of "innocuous details" does not demonstrate that the source had sufficient knowledge of appellant's criminal activity.
>
> Second, police made two of the three vehicle stops several days after seeing one of the vehicles at 610 Liberty Street and the other at 620 Liberty Street, and the drivers did not state that the drugs had come from 620 Liberty Street or appellant.
>
> Third, the affidavit lacked pertinent information about the trash pulls, such as the condition of the trash bags in the trash can. Appellant argues that because the affidavit lacked this information and the public had easy access to the trash, the link between appellant and the trash is too indirect. In other words, the evidence from the trash is unreliable as it could have come from a third party. In other cases, police demonstrated a direct link and thus the reliability of the evidence, by observing the defendant take out the trash or finding mail addressed to the residence; however, none of this evidence was present in appellant's case. Fourth, appellant argues that Maryland appellate courts have definitively rejected that police always have probable cause to search a drug dealer's home based solely on

the assumption that a drug dealer keeps drugs and records of his drug trade at his residence.

*Id.* at 101–03.

The Appellate Court denied relief on July 28, 2020. *Id.* at 108. It concluded the court did not err because the judge who issued the warrant "had a substantial basis for concluding that there was probable cause for a warrant considering the totality of the circumstances[,]" including the anonymous source and the evidence from the trash pulls. *Id.* at 105–06. It found the court gave no weight to the car stops and had appropriately minimized the significance of the anonymous source. *Id.* at 106. It stated:

> The information contained in the affidavit supporting the warrant established a nexus between the items sought (controlled dangerous substances) and the location to be searched (620 Liberty Street). The anonymous source indicated that appellant was selling drugs and that he was doing so from 620 Liberty Street. The source provided information about vehicles seen frequently at that location, and the police corroborated that information. The source identified the type of drugs sold from 620 Liberty Street—*i.e.*, cocaine, heroin, crack cocaine, marijuana, and pills. The trash pulled from the garbage can in front of 620 Liberty Street, on two occasions, contained cocaine residue and plastic bags missing corners, consistent with use in drug sales. The officers also found mail addressed to appellant in the trash at that location, corroborating the anonymous source's information that appellant was connected to 620 Liberty Street.
>
> The police corroborated some of the information given by the anonymous source. Although "an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity," *White*, 496 U.S. at 329, here the information given by the source, as noted above, could be and was corroborated by the police.
>
> In addition, the police examined trash they pulled from garbage cans left at the edge of the property. We need not determine whether one trash pull would be sufficient to establish probable cause to search a residence because here there were two trash pulls, a week apart, and additional evidence connecting contraband to the home and corroborating the anonymous source's information. *See United States v. Leonard*, 884 F.3d 730, 734-35 (7th Cir. 2018) (finding probable cause for a search warrant, reasoning that "[w]hile one search turning up marijuana in the trash might be a fluke, two indicate a trend.").
>
> We hold that the trial court correctly denied the motion to suppress the evidence, considering the totality of the circumstances.

7

*Id.* at 101–08.

Bright timely filed a Petition for Writ of Certiorari in the Maryland Supreme Court (then named the Court of Appeals) on August 11, 2020. *Id.* at 109–13. He again challenged the denial of his motion to suppress, but instead of focusing on the sufficiency of the information that supported the warrant as he had in the lower courts, he claimed Seichepine's statements in the affidavit were "fabricated" and "deliberately deceptive with intentions of obtaining a conviction." *Id.* at 109. He argued the "failure to disclose evidence, a defamation of character, perjured testimony, and lack of efficient counsel" justified the vacatur of the trial court's decision to deny his motion to suppress. *Id*. at 111. As support, he alleged that the affidavit falsely stated he was convicted of robbery in 2015; that Trevon Brown never made any statements to police; that the State committed *Brady* violations based on the failure to disclose the chain of custody for the evidence obtained during the trash pulls; that members of the Sheriff's Office deliberately withheld evidence as to the ownership of the trash can from which the trash was collected; and that the failure to provide information about the anonymous tip violated his rights. *Id*. at 109–10. Bright had not raised these arguments previously.

The Maryland Supreme Court denied certiorari on October 23, 2020. *Id.* at 131. Bright filed his petition for a writ of habeas corpus in this Court three weeks later, on September 14. ECF 1. He did not file a petition for post-conviction relief in state court before seeking federal habeas relief. The Court permitted Bright to supplement his initial petition. ECF 2. In his supplemental filings, Bright identifies the following errors as grounds for relief:

Ground 1: "Insufficient evidence – Affidavit lacking dire information." ECF 4, at 5. This claim appears to be a challenge to the denial of Bright's motion to suppress based on defects in

Seichepine's affidavit.  *See* ECF 5, at 1–2.  Bright cites *Giordenollo v. United States*, 357 U.S. 480 (1958).

Ground 2: "Deliberate and reckless misrepresentations of the warrant affidavit."  ECF 4-1, at 1.  In support of this claim, Bright states Seichepine's affidavit did not include the precise date the anonymous tip was received, who received the tip, or how the tip was relayed to police. *Id.*  He suggests the contents of the tip could have been altered by Seichepine, including through the post-hoc addition of details about the various vehicles and their owners, to bolster the tip's apparent credibility.  *Id.*  He also states the affidavit mispresented that he had been convicted of felony robbery in 2015, included statements attributed to Trevon Brown that Brown never made, and withheld information about the trash pulls.  *Id.* at 1–2.  Finally, he attacks the relevance of the traffic stops, noting they occurred days after the vehicles had been observed at 620 Liberty Street. *Id.* at 1.

Ground 3: "Violations of Rule 4-263 discovery in Circuit Court by States' Attorney." *Id.* at 2.  In support of this claim, Bright alleges the State's Attorney failed to disclose all material information regarding the anonymous tip and all information regarding the physical evidence obtained during the trash pulls.  *Id.*  Bright cites *Brady v. Maryland*, 373 U.S. 83 (1963), and *Mooney v. Holohan*, 294 U.S. 103 (1935).

Ground 4: "Perjury by Officer Seichepine."  ECF 4-1, at 2.  Bright alleges that, at the suppression hearing, Seichepine falsely testified that "multiple calls" were received regarding crimes at 620 Liberty Street.  *Id.* at 3.  Bright alleges this information was used to have his case "waived to the Circuit Court via criminal case."  *Id.*

Ground 5: "Prosecutor Misconduct. "  *Id.*  Bright alleges the Attorney General submitted a brief on behalf of the State (presumably on direct appeal) that falsely stated that he had a prior

conviction for felony robbery, despite that mistake being corrected during the motions hearing. *Id*. Bright further alleges the State's Attorney did not show "due diligence to identify all of the material and information being disclosed at a hearing violating [his] rights to due process." *Id.*

## II.  Standard of Review

For habeas petitioners in custody pursuant to the judgment of a state court, relief is available "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see also Wilson v. Corcoran*, 562 U.S. 1 (2010); *Barnes v. Joyner*, 751 F.3d 229, 238 (4th Cir. 2014). With extremely limited exceptions, state prisoners first must raise their federal claims in the state courts and exhaust the remedies available there before seeking federal habeas review. *Shinn v. Ramirez*, --- U.S. ----, 142 S. Ct. 1718, 1731–32 (2022); 28 U.S.C. § 2254(b)(1)(A). To satisfy the exhaustion requirement, a state prisoner must have raised "his claim before every available state court, including those courts . . . whose review is discretionary." *Jones v. Sussex I State Prison*, 591 F.3d 707, 713 (4th Cir. 2010) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999)). A claim has been adequately raised for purposes of exhaustion when "'the constitutional substance of the claim is evident,' such that 'both the operative facts and the controlling legal principles [are] presented to the state court.'" *Id.* (quoting *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000)).

When a state prisoner has not raised a claim in the state courts and state procedural rules would require dismissal of the claim, the claim technically is exhausted, but it is deemed "procedurally defaulted." *Ramirez*, 142 S. Ct. at 1732. The Court "may only review procedurally defaulted claims to determine whether the petitioner has shown that he falls within an exception" that permits review of the claim's merits. *Richardson v. Kornegay*, 3 F.4th 687, 695 (4th Cir. 2021). The two recognized exceptions require the petitioner to demonstrate "cause and prejudice,

or actual innocence." *United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010). "Cause" consists of "some objective factor external to the defense [that] impeded [] efforts to comply with the State's procedural rule[.]" *Wolfe v. Johnson*, 565 F.3d 140, 158 n.27 (4th Cir. 2009) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "Prejudice" is established when a petitioner demonstrates that "errors at his trial . . . worked to his *actual* and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions[.]" *Id.* (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). Actual innocence, recognized as a "fundamental miscarriage of justice," is established when a petitioner shows, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him[.]" *United States v. Herrera-Pagoada*, 14 F.4th 311, 319 (4th Cir. 2021) (quoting *Bousely v. United States*, 523 U.S. 614, 623 (1998)).

When a state court has ruled on the merits of a petitioner's federal claim, this Court's review is highly deferential. "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions." *Larry v. Branker*, 552 F.3d 356, 368 (4th Cir. 2009). Pursuant to § 2254(d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "a petitioner is entitled to relief only if the state court adjudication of their claim was [1] 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court'; or [2] 'based on an unreasonable determination of the facts in light of the evidence presented.'" *Allen v. Stephan*, 42 F.4th 223, 246 (4th Cir. 2022) (quoting 28 U.S.C. § 2254(d)). "The role of a federal habeas court is to guard against extreme malfunctions in the state criminal justice systems, not to apply *de novo* review of factual findings and to substitute its own opinions for the determinations made on the scene by the trial judge." *Davis v. Ayala*, 576 U.S. 257, 276 (2015) (internal quotation marks and citations omitted).

"[C]learly established Federal law" for purposes of § 2254(d)(1) includes only "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 365 (2000)). "A state court's decision is 'contrary to' clearly established federal law under § 2254(d)(1) when it 'arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law' or 'decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.'" *Allen*, 42 F.4th at 246 (quoting *Williams*, 529 U.S. at 412–13). A state court's decision is an "unreasonable application" of clearly established federal law if the state court correctly identified the governing legal principle but "'unreasonably applie[d] that principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413). This standard is meant to be "difficult to meet." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "'[T]he ruling must be objectively unreasonable, not merely wrong; even clear error will not suffice.'" *Allen*, 42 F.4th at 246 (quoting *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728 (2017) (per curiam)). The petitioner "must show that the state court's ruling was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (quoting *LeBlanc*, 137 S. Ct. at 1728).

A state court's factual determinations, meanwhile, "are presumed correct, and the petitioner must rebut this presumption by clear and convincing evidence." *Id.* (citing 28 U.S.C. § 2254(e)(1)). A state court's decision is based on an "unreasonable determination of the facts in light of the evidence presented" under § 2254(d)(2) when it is "'sufficiently against the weight of the evidence that it is objectively unreasonable.'" *Id.* (quoting *Winston v. Kelly*, 592 F.3d 535, 554 (4th Cir. 2010)). "[E]ven if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . .

12

determination.'" *Wood v. Allen*, 558 U.S. 290, 301 (2010) (quoting *Rice v. Collins*, 546 U.S. 333, 341–42 (2006)). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is "especially so" when the state court "resolved issues like witness credibility." *Id.* (quoting *Cagle v. Branker*, 520 F.3d 320, 324–25 (4th Cir. 2008)). Credibility judgments may be overturned only when the error is "'stark and clear.'" *Id*.

Even if a petitioner meets his burden under § 2254(d) and establishes the state court erred, "habeas relief will not be granted unless the error had substantial and injurious effect or influence in determining the jury's verdict" or there is at least "grave doubt as to the harmlessness" of the error. *Allen*, 42 F.4th at 246–47 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), and *Fullwood v. Lee*, 290 F.3d 663, 679 (4th Cir. 2002)) (internal quotation marks omitted). In short, AEDPA requires this Court to uphold the judgment of a state court except in the rarest of cases.

**III.   Analysis**

Bright claims that the search warrant that led to his arrest was based on insufficient evidence, that Seichepine lied in his affidavit and in court, that the prosecution failed to disclose material evidence, and that the State's brief on direct appeal contained a false statement. ECF 4 & 5. None of Bright's claims satisfies the stringent requirements for federal habeas relief.

Challenges to the lawfulness of the search and seizure that led to Bright's arrest, which he asserts in grounds one and two, are not cognizable on federal habeas review. Federal habeas relief is not available for an alleged Fourth Amendment violation when a petitioner had a "full and fair opportunity to litigate" his Fourth Amendment claim in his state proceedings. *Stone v. Powell*, 428 U.S. 465, 494 (1976); *Boggs v. Bair*, 892 F.2d 1193, 1199–1200 (4th Cir. 1989); *Doleman v.*

*Muncy*, 579 F.2d 1258, 1265 (4th Cir. 1978). The Supreme Court has explained that the purpose of excluding evidence obtained in violation of the Fourth Amendment is to deter misconduct by law enforcement officers. *See Stone*, 428 U.S. at 490–92. In *Stone*, the Court reasoned that providing an additional avenue for the exclusion of evidence through federal habeas relief is unlikely to have any additional deterrent effect. *Id.* Although *Stone* did not define the phrase "full and fair opportunity to litigate," the Fourth Circuit has offered the following guidance:

> [A] district court, when faced with allegations presenting Fourth Amendment claims, should, under the rule in *Stone v. Powell*, *supra*, first inquire as to whether or not the petitioner was afforded an opportunity to raise his Fourth Amendment claims under the then existing state practice. This may be determined, at least in this Circuit, from the relevant state statutes, the applicable state court decisions, and from judicial notice of state practice by the district court. Second, . . . when the district court has made the "opportunity" inquiry, it need not inquire further into the merits of the petitioner's case, when applying *Stone v. Powell*, *supra*, unless the prisoner alleges something to indicate that his opportunity for a full and fair litigation of his Fourth Amendment claim or claims was in some way impaired.

*Doleman*, 579 F.2d at 1265.

Under Maryland law, Bright had a full and fair opportunity to challenge the lawfulness of the search and seizure that led to his arrest. Indeed, Bright challenged the validity of the search warrant in a pre-trial hearing where he was represented by counsel. He raised the challenges again on direct appeal, with the assistance of counsel. Before both courts, he argued Seichepine's affidavit did not support probable cause, that it was missing critical information, and that the missing information made it possible for its contents to have been fabricated or manipulated by police. Both the trial court and the Appellate Court addressed Bright's arguments. Based on this record, Bright's Fourth Amendment challenges to the search warrant in grounds one and two are barred by *Stone*. *See Grimsley v. Dodson*, 696 F.2d 303, 304 (4th Cir. 1982) ("*Stone v. Powell* marked, for most practical purposes, the end of federal court reconsideration of Fourth Amendment

14

claims by way of habeas corpus petitions where the petitioner had an opportunity to litigate those claims in state court.").

Grounds three and four, which concern alleged discovery violations and perjury by Seichepine at the suppression hearing, are procedurally defaulted. These claims were not raised before every available court on direct appeal. In Maryland, a criminal defendant with a claim provable on the trial or sentencing record is entitled to a single appeal to the Appellate Court and a single petition for discretionary review to the Maryland Supreme Court. *See generally* Md. Code Ann., Cts. & Jud. Proc. §§ 12-301, 12-307, 12-308. Bright did not present grounds three or four to the Appellate Court.[2] Rather, he raised them for the first time in his petition for certiorari in the Maryland Supreme Court. And now, there is no state court mechanism by which Bright could raise any of these claims.[3] Because Bright could have, but did not, raise these claims before every available court on direct appeal, grounds three and four are procedurally defaulted.[4]

The Court may review procedurally defaulted claims only if Bright can establish either cause and prejudice or a fundamental miscarriage of justice. *Pettiford*, 612 F.3d at 280. Bright

---

[2] Bright does not argue the alleged discovery violations came to light after the conclusion of his proceeding before the Appellate Court or that he learned about the falsity of Seichepine's testimony after his appeals. He could have presented both claims to the Appellate Court, but he raised only one issue—that the court erred in denying his motion to suppress—and his arguments there focused on the sufficiency of Seichepine's affidavit.

[3] Bright did not pursue state post-conviction relief. Even if he had, Maryland law provides that, absent "special circumstances," claims not raised "on direct appeal" or "in any other proceeding that the petitioner began" are deemed presumptively waived in post-conviction proceedings. Md. Code Ann., Crim. Proc. § 7-106(b). So his failure to pursue the claims in grounds three and four on direct appeal would have precluded post-conviction relief unless the reviewing court found qualifying "special circumstances."

[4] Grounds one and two, if not barred by *Stone*, also are procedurally defaulted. While Bright's arguments before the Appellate Court overlap, to some extent, with his claims in grounds one and two, he did not present those arguments to the Maryland Supreme Court in his petition for certiorari, which focused on the alleged discovery violations, perjury, and misrepresentations in the affidavit.

15

has not offered a sufficient basis for finding "cause" to excuse the procedural default of his claims in grounds three and four.  He argues that his ability to present these claims to the state courts was impeded by the State's discovery violations, but he does not explain how.  ECF 10, at 4.  Bright states the discovery violations came to light after the State provided the affidavit, but that was before February 2019 and well before he filed his appeal.  *See* ECF 7-1, at 109–10.  When the affidavit was disclosed, Bright knew or should have known that the State's Attorney failed to disclose material information regarding the anonymous tip and information regarding the physical evidence obtained during the trash pulls.  And when Seichepine testified at the suppression hearing, Bright was on notice then of the testimony he now claims was false – that "multiple calls" were received regarding crimes at 620 Liberty Street.  So the State's alleged discovery violations could not have impeded his ability to bring the claims in grounds three and four, for which he knew the basis long before his appeal.  Bright alternatively argues the COVID-19 pandemic disrupted his access to the law library during his direct appeal.  ECF 12.  He provides a letter dated September 24, 2020 indicating he had requested access to the law library and that the facility's library and education staff had only recently returned to the institution.  ECF 12-1, at 3.  But here again, he does not explain how this disruption impacted his ability to properly present his claims to the state courts.  Bright was represented by counsel before the Appellate Court, and his attorneys undoubtedly had access to legal research databases.  With respect to the petition for certiorari, Bright was required only to restate the claims he already had brought.  Bright has not established cause to excuse his failure to comply with Maryland's procedural requirements.

      Bright also has not established a fundamental miscarriage of justice.  He states he has "introduced new, credible evidence of actual innocence" and cites to a photo that he attached to his petition for certiorari.  ECF 10, at 4.  The undated photo depicts a trash bin with "622 Liberty"

handwritten on it.  ECF 7-1, at 114.  Bright does not explain how the photo proves his innocence.  In his petition for certiorari, he refers to it only briefly: "Proof of numbers written on garbage can enclosed photo taken [i]n big bold white numbers printed on bin is '622' the adjoining neighbors residence 622 Liberty St."  *Id.* at 110.  The Court interprets Bright's argument to suggest the evidence recovered from one of the trash pulls did not belong to him because the trash bin belonged to the adjacent residence.  There are several problems with this argument.  First, it is not clear when the picture was taken or by whom.  Second, nothing in the photo indicates the trash bin depicted is the same one from either trash pull.  Finally, even if the evidence recovered from the trash pulls were eliminated, there is other evidence to support Bright's conviction.  He was linked to 620 Liberty Street by an anonymous source who informed the Wicomico County Sheriff's Office in November 2018 that Bright was distributing CDS from that address.  ECF 7-1, at 19.  The source also stated that Bright frequently drove a blue Pontiac Bonneville, a gold Pontiac G6, and a burgundy Ford Expedition, all of which were registered to "Danielle Dashielle."  This allegation is corroborated by police records that show Bright had been stopped while driving a gold Pontiac G6, a red Ford Expedition, and a red Pontiac sedan (all registered to Dashields), and the police's observation of Bright driving the Pontiac G6 on December 17, 2018.  Police officers observed the three vehicles Bright had driven and a blue Pontiac Bonneville, also registered to Dashields, parked in the driveway or on the street in front of 620 Liberty Street on multiple days.  They conducted a traffic stop of a woman driving away from 610 Liberty Street—from which the anonymous source said Bright also was distributing CDS—in the Bonneville.  She stated that 610 Liberty was her current address and the vehicle belonged to "Danielle," whom she identified as the fiancée of "Lanier."  From the trunk, the officers recovered a glass measuring cup with a white residue that showed an immediate positive reaction for the presence of cocaine.  On December 18,

17

police executed a search warrant for 620 Liberty Street, the address where three vehicles that Bright drove routinely parked. They seized fentanyl and other drugs from the house and arrested Bright. The Court cannot conclude, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted" Bright. *See Herrera-Pagoada*, 14 F. 4th at 319.

Lastly, Bright's claim of "prosecutorial misconduct" in ground five is without merit. Bright asserts the Attorney General's brief to the Appellate Court incorrectly stated that he previously had been convicted of robbery, when in fact he had been convicted of conspiracy to commit robbery. *See* ECF 7-1, at 68. This claim has not been presented to any state court and is, therefore, unexhausted.[5] The respondents nevertheless urge the Court to dispose of the claim on the merits under 28 U.S.C. § 2254(b)(2). That provision of the habeas statute permits courts to deny applications "on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2); *see Swisher v. True*, 325 F.3d 225, 232–33 (4th Cir. 2003) (affirming the denial of an unexhausted claim under § 2254(b)(2)).

Dismissal of ground five on the merits is warranted. Bright's claim is based on a single sentence in the Attorney General's brief. The Attorney General's error in the description of Bright's prior conviction had no bearing on the Appellate Court's rejection of Bright's arguments. Bright's sole claim on direct appeal was that the court erred in denying his motion to suppress. The Appellate Court determined there was a substantial basis for the judge to issue the warrant,

---

[5] In his petition for certiorari, Bright raised a similar but factually distinct argument. He claimed the affidavit misidentified his prior conviction in the same way. *See* ECF 7-1, at 109. Bright did not identify the error in the State's brief before the Appellate Court, however, so the claim was not fairly presented to the Maryland Supreme Court. The Court assumes without deciding that the claim is not procedurally defaulted because the asserted error occurred during Bright's direct appeal and might still be raised in a state post-conviction proceeding.

affirming the lower court's ruling. The court did not rely on Bright's prior convictions in upholding the ruling. Its analysis appropriately focused on Seichepine's account of the anonymous tip and the evidence recovered from the trash pulls. Bright asserts the mischaracterization of his prior conviction caused the court to view him as a "hardened violent felon," but nothing in the court's opinion supports that assertion. The Court finds the minor mischaracterization of Bright's prior conviction had no effect on the outcome of Bright's appeal. Bright is not entitled to relief on that ground.

### IV.    Certificate of Appealability

The accompanying Order is a final order adverse to Bright. Thus, the Court must issue or deny a certificate of appealability. Rule 11(a), *Rules Governing Section 2254 Cases in the U.S. Dist. Cts.* Bright must receive a certificate of appealability before an appeal may proceed. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects constitutional claims on the merits, a petitioner may satisfy the standard by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a petition is denied on procedural grounds, the petitioner may meet the standard by showing that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Id.*

Bright has failed to demonstrate that a certificate of appealability should issue under either standard. He still may request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See* Fed. R. App. P. 22(b)(1).

## V. Conclusion

Bright's habeas petition is dismissed. The Court declines to issue a certificate of appealability. A separate order follows.

Date: September 7, 2023

_____
Deborah L. Boardman
United States District Judge